Brandolini, Appellant, *v.* Grand Lodge of Pennsylvania, Order Sons of Italy in America.

Argued December 3, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON and JONES, JJ.

*Samuel D. Goodis,* with him *Allen J. Levin* and *Sundheim, Folz, Kamsler & Goodis,* for appellant.

*Edward H. Cushman,* with him *H. P. Abramson,* for appellee.

OPINION BY MR. JUSTICE LINN, January 19, 1948:

The plaintiff appeals from judgment for the defendant notwithstanding the verdict for the plaintiff.

On July 25, 1939, plaintiff and defendant executed a contract by which plaintiff agreed to provide materials and labor and to erect the Dante Orphanage at Concordville, Pennsylvania, for the defendant, an unincorporated association. The contract, containing plans or drawings dated July 11, 1939, was prepared by plaintiff's counsel, on the building contract form of the American Institute of Architects. Negotiations antedating July 25 were merged in the written instrument executed on that date. The plaintiff began work on or about August 1, 1939, and finished October 19, 1940. The de-

fendant accepted the building and paid the contract price plus money due for extras ordered, as the contract required, in writing. So the matter stood until May 24, 1943, when the plaintiff brought this suit for additional compensation; it was not until March 14, 1945, that he filed his statement of claim. He sues for claims in two classes: (1) for additional work and material required by the plans attached to the contract but which, he avers, were not the same as those on which he bid, and which, he avers, were fraudulently included in the contract when it was executed on July 25, 1939; (2) for extra labor and material supplied pursuant to oral instructions.

To recover on the first class of claims, that is, claims for work and materials not in contemplation when he made his bid, the plaintiff had the burden of producing evidence sufficient to reform the agreement, the rule then to be applied, requiring that "the evidence must be clear, precise and indubitable, established by two witnesses, or by one witness and corroborating circumstances." *Pender v. Cook*, 300 Pa. 468, 473, 150 A. 892; *Schoble v. Schoble*, 349 Pa. 408, 37 A. 2d 604. Whether the evidence met the standard to justify submission to the jury is a question of law for the court: *Thompson v. Schoch*, 254 Pa. 585, 589, 99 A. 72. With respect to the second class of claims, it may first be noted that the contract provided that such claims shall not be valid unless for extras or changes pursuant to the written order of the owner signed or counter-signed by the architect or on a written order from the architect stating that the owner had authorized such work or change. Plaintiff contends that provision was nullified by an oral statement made contemporaneously with the execution of the contract.

The trial lasted about two weeks and the learned trial judge submitted the case to the jury after refusing defendant's motion for a directed verdict. Subsequently, after argument before the court in banc on defendant's

motion for judgment notwithstanding the verdict, the court concluded, with respect to the first class of claims, that there was not sufficient proof to reform the contract; and, with respect to the second class, there was no proof of authority to waive the written requirements of the contract. We think the record requires the conclusion reached by the learned court below.

In April, 1939, the defendant received bids (among them one from the plaintiff) which were rejected as too high. In May defendant's architect issued to appellant and two other low bidders a bulletin making important changes in the plans theretofore submitted, and again received bids which were rejected as too high. After that rejection, the plaintiff submitted a third and lower bid. In June, the architect revised the plans, reducing the cost, following which the plaintiff reduced his last bid by $2,000 and, as he testified, "I accepted the job at that price," $116,000. He said that defendant informed him that he could have his counsel prepare the contract, and that his counsel did so, using the standard form mentioned above.

As we understand the plaintiff's position with respect to the first class of claims, it is that the plans in existence when he "accepted the job" for $116,000 were changed to plans for a higher priced structure without his knowledge before the contract was executed. He testified that before he signed, but at the time when both parties had met for the purpose of signing the contract, he asked the president of the orphanage (who was not the president of defendant) and the architect whether the plans "were in compliance with those on which we submitted our bid on May 31st" and they "assured me that they were all in accordance, there were no changes whatsoever." [1] On that assurance, he declares, he signed the contract and initialed the plans incorporated in the contract without examining them separately. He contended that early in August he dis-

---

[1] This was denied by witnesses called by defendant.

covered differences in these plans from those on which he had made his bid and notified the president of the orphanage and the architect and that they "acknowledged the existence of the discrepancies between the two sets of plans and specifications, and orally agreed, on behalf of defendant, that defendant would pay to plaintiff, upon completion of the work, the fair, reasonable and market value of the additional work and materials required by the changes in the plans and specifications and any damages occasioned by plaintiff through delays resulting from said changes." [2] He testified in support of that averment and put in evidence a copy of a letter to the architect dated August 10th written and mailed by him stating that in laying out the preliminary construction work he had discovered "that the plans now being used are not the plans which we bid upon"; that by going ahead on the existing plans, the cost would be materially increased and that unless he heard to the contrary from the architect, he would assume the architect was referring it to the proper parties "in order that the matter may be disposed of as outlined above." The architect testified that he never received that letter but for present purposes, in accord with the verdict, we must assume that he received it. The architect did nothing with respect to it. There is practically nothing else which we can regard as corroborating circumstances required by the rule, and that letter, emanating, as it does, from the plaintiff, we do not consider sufficient. On this point, we must consider, as strongly militating against plaintiff's claim to reform the contract, the fact that his attorney who drew the contract and who was present for the purpose of advising him when it was executed, did not take the stand to corroborate him. Compare *District of Columbia's Appeal,* 343 Pa. 65, 79, 21 A. 2d 883; *Wilkinson v. United Parcel Service,* 158

---

[2] This was denied by witnesses called by defendant.

Pa. Superior Ct. 22, 43 A. 2d 408; *Marotto v. George D. Ellis & Sons, Inc.,* 149 Pa. Superior Ct. 221, 28 A. 2d 339.

The plaintiff understood that the contract required written authority for extras and alterations, and was paid for work and labor for which written authority was furnished. With respect to the claims for extras which the plaintiff testified were orally ordered, it would be sufficient to summarize what was said by Judge FLOOD in his opinion entering judgment, that there is no legal liability without proof of authority from the defendant and such proof is lacking. But plaintiff's argument fails for an equally fundamental reason. He testified that on July 25, 1939, at the meeting at which the contract was executed and delivered, Judge ALESSANDRONI, as Grand Venerable of the defendant Grand Lodge, made the following statement, "Also, the Judge did state the fact that from then on the architect and the president of the Orphanage, who was in charge, had complete authority of the construction of that building, of anything pertaining to the construction, they would have, the two men, would answer for the Order. Q. What was Acchione supposed to do? A. Well, Mr. Acchione was appointed to be the man to be on the job, the representative of the Order, and to see to it that the work will be carried out in accordance with the plans and specifications and complete execution of the construction, of any changes or any work, any discrepancies that may come up from time to time, it would be up to him on the job, to give decisions, between he and the architects." From that testimony the court is asked to hold that at the time the parties were executing the contract they agreed that it should not be performed according to its terms but should be reformed to accord with plaintiff's contention. For the reasons stated earlier in this opinion with respect to the claims in the first class, the evidence was insufficient to go to the jury.

Judgment affirmed.