Hillsborough,
No. 4396.

WALTER D. McLAUGHLIN *v.* UNION-LEADER CORPORATION.

Argued May 4, 1955.

Decided July 8, 1955.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Brown* orally), for the plaintiff.

*Upton, Sanders & Upton* and *A. Luke Crispe* (*Mr. Robert W. Upton* and *Mr. Sanders* orally), for the defendant.

KENISON, C. J. In considering the motions for a nonsuit and a directed verdict we proceed on the familiar principle of law that the prevailing party below is entitled to have the evidence considered by the appellate court in its most favorable aspect. *Maloney* v. *Company*, 98 N. H. 78; *Isabelle* v. *Carnes*, 99 N. H. 184, 185. On one view of the evidence the plaintiff was uncooperative, disobedient and inefficient, while on another view he was consistently successful, efficient and performed his contractual duties without complaint. The jury having adopted the latter view, which was warranted by the evidence, we must accept it for the purposes of review.

It is the plaintiff's contention that the defendant, either expressly or impliedly, undertook to provide the plaintiff an opportunity to work consistent with his position as advertising manager. Reliance is placed on Restatement, Agency, s. 433, *comment* c: "Fixed Salary. If the agent's compensation is not dependent upon the amount of work done, as where he is to receive a fixed salary, a promise by the principal to furnish him with work is inferred from a promise to employ only if it is found that the anticipated benefit to the agent from doing the work is a material part of the advantage to be received by him from the employment. This anticipated benefit may be the acquisition of skill or reputation by the employee or the acquisition of subsidiary pecuniary advantages, as in the case of the employment of public performers whose reputation will be enhanced by their appearance or diminished by their failure to appear, beginners in a trade or profession, and those whose compensation is likely to be enhanced by receiving gratuities from outside sources. Other employments may come within the same principle."

On the other hand it is the defendant's contention that it was under no obligation to provide the agent with an opportunity to work. In support of this are English cases involving salesmen, *Turner* v. *Sawdon & Co.*, [1901] 2 K. B. 653; *Lagerwall* v. *Wilkinson et als.*, 80 Law Times Reports 55 (1899); an unofficial opinion from Rhode Island *Lathrop* v. *Visitor Printing Co.*, 30 Atl. 964; and see *Wallace* v. *Kranz*, 234 N. Y. S. 439; 226 App. Div. 125.

While of course the plaintiff's position was not similar to that of a public performer which is referred to as an illustration in the Restatement of Agency, his status was more than that of a salesman or servant. "Likewise, in commercial employment, an employee may have been promised a place of dignity and privilege, so that it is a breach of contract, and an essential one, to reduce him to an inferior status. One who has been hired to be superintendent or general sales manager would generally be justified in quitting if he is ordered to act as floorwalker or sales clerk, even though his salary is not reduced. Such an order would also . . . be held to be a wrongful discharge by the employer." 3 Corbin, Contracts, *s.* 683.

We do not think it would be a reasonable construction of the contract to say that the plaintiff was to have the title of advertising manager but was to be placed principally in an inactive status. It clearly could be found from the evidence that this was not contemplated by the parties when the contract was entered into and at the time when the plaintiff's services were considered essential to the defendant's advertising activities. This does not nullify the defendant's right under the contract to assign duties to the plaintiff or to change them. However the defendant's right to assign the plaintiff's duties and responsibilities does not extend to the point where the assignment would constitute in effect a virtual replacement and demotion. *Marks* v. *Cowdin*, 226 N. Y. 138. The jury could find that plaintiff's leave of absence when combined with the appointment of a new local advertising manager constituted a breach of the contract by the defendant. As was said in *Mair* v. *Southern Minnesota Broadcasting Co.*, 226 Minn. 137, 140: "To the employes, to the public, and to the defendant itself, he would be manager in name only." Such a result was inconsistent with the plaintiff's contract of employment and his position as advertising manager. Anno. 4 A. L. R. (2d) 276; 4 Williston, Contracts (Rev. *ed.*) *s.* 1015. The motions for a nonsuit and a directed verdict were properly denied. *Collier* v. *Sunday Referee Pub. Co.*, [1940] 2 K. B. 647. See also, *In re Rubel*

*Bronze & Metal Co. Ltd. and Vos,* [1918] 1 K. B. 315, distinguishing and doubting *Turner* v. *Sawdon & Co.,* [1901] 2 K. B. 653.

A question by the defendant to the witness Loeb as to why he did not take more drastic steps than putting the plaintiff on an indefinite leave of absence with pay was excluded by the Trial Court on the ground it had already been explained in detail. As we read the record, this was correct since the witness' previous testimony was to the effect that the plaintiff was not then giving satisfactory performance under the contract, and, as the Trial Court observed, "was all tired out." This exclusion was not erroneous. *Merchants Nat. Bank* v. *Sullivan,* 96 N. H. 430, 435. Loeb testified that he "gave . . . very careful consideration" to McQuaid's suggestion that the plaintiff be placed on a leave of absence. When the same evidence was subsequently offered through the witness McQuaid, it was only cumulative and properly excluded. *Alukonis* v. *Kashulines,* 96 N. H. 107. Evidence as to whether a "leave of absence with pay" was "an arrangement used in newspaper circles" was properly excluded. There being no evidence that the parties contracted with reference to any usage, or that the suggested usage was customary or general, or known to the plaintiff, the evidence related to a collateral issue, and it was for the Trial Court to decide "when and how far it [was] profitable to investigate such issues." *Fellows* v. *Company,* 76 N. H. 457, 458. See *Buxton* v. *Langan,* 90 N. H. 13, 16.

The defendant sought unsuccessfully to withdraw from the jury on the issue of plaintiff's damages the benefits allegedly due the plaintiff from the defendant's profit-sharing plan and group insurance plan. The jury were instructed that if the plaintiff recovered, he was entitled to any amounts he would have received in addition to his contract pay had both parties completely performed the contract and that this included the profit-sharing payments he would have received and the amounts which would have been expended in insurance premiums for his benefit. Assuming for the purposes of this case, as the defendant contends, that neither the profit-sharing plan nor the group insurance plan created any contractual rights in the plaintiff, it does not follow that they are incompetent evidence on the issue of damages. The plaintiff had received benefits under both plans and probably would have continued to receive them in the future if the contract had been performed. The loss of these benefits was an element of damages to which the plaintiff was entitled in order to place him in as good a

position as he would have been in if the contract had been performed. 5 Williston, Contracts (Rev. *ed.*) *s.* 1338; Restatement, Contracts, *s.* 330. The loss of these benefits was a direct consequence of the breach of the employment contract which the defendant had reason to foresee as a possible result of the breach for which compensatory damages may be awarded. *Davis* v. *Company,* 77 N. H. 403; *Johnson* v. *Waisman Bros.,* 93 N. H. 133.

Plaintiff argued to the jury that Loeb brought Montague to Manchester to relieve the payroll of his Vermont newspapers. This argument was within the bounds of legitimate advocacy. Since the Trial Court has not found the argument unfair and prejudicial, the exception is overruled. *Richards* v. *Company,* 96 N. H. 272, 278. The argument that classified and national advertising was removed from the plaintiff's supervision by Montague after the contract was signed was an inference that could be made from the evidence even though it is more likely that it was before the contract was signed on November 1, 1947. Montague's arrival in Manchester was about October 1, 1947, and he stated that this took place "within two or three months" thereafter. This could have been after the contract was signed and therefore the argument was not without foundation. *Sweeney* v. *Willette,* 98 N. H. 512. Plaintiff argued that there was only "silence" from the lawyer retained by the defendant in 1948 when he was consulted about the termination of the employment contract, that the lawyer could have testified that he advised the defendant to fire the plaintiff but that nothing was done. While the Trial Court would have been justified in disallowing such argument (*Freeman* v. *Fogg,* 82 Me. 408) and while there is some reluctance to permit an adverse inference to be based on the failure of an attorney to testify, it has been allowed. *Brandolini* v. *Grand Lodge of Pa.,* 358 Pa. 303; *Douglas* v. *Insurance Co.,* 215 Mich. 529. See 6 Wig. Ev., *s.* 1911. The general rule permitting comment on the failure to produce available and material witnesses (*Woodman* v. *Peck,* 90 N. H. 292) should be applied with caution to attorneys who are of counsel in the litigation but we cannot say that the Court's ruling in this case warrants a reversal.

The motions for a mistrial and to set aside the verdict involve primarily the misconduct of a juror. This juror, as proprietor of a theatre, ran a single column advertisement daily in the defendant's newspaper in Manchester costing three or four dollars per day or about $1,200 per year. This was not known to Court or counsel when the jury was impaneled. Early in the trial the juror in

conversations with the defendant's soliciting agent for advertising, whom he had known for several years, inquired if the plaintiff was a drinking man, or abused the help and observed that "It is funny they fired him." According to the testimony of the soliciting agent there was a conversation as to a letter by Finder but the juror advised the Court that this was a statement by the soliciting agent which the juror did not answer.

In *Shulinsky* v. *Railroad,* 83 N. H. 86, cited by the defendant, a juror remained silent when asked by the Court during the impaneling of the jury whether he had any business relations or was a creditor or debtor of the plaintiff. The defendant in reliance on information given under the Court's authority did not challenge him. It later appeared that the juror had signed a number of notes with the plaintiff and that there was an outstanding note of $200 at the time of the trial. The verdict was set aside because of the reliance on false information. That case is not controlling here.

It is not any and every business relation that disqualifies a juror and if it did the newspaper subscriber, the telephone user, the electric and water consumer and those who engage in a host of other common everyday habits of ordinary commercial and domestic life would be eliminated from the average jury panel. The juror was asked whether he had any contractual relation "which would interfere with [his] deciding the case fairly." He considered himself a small advertiser and "figured . . . two dollars for a paper or advertising . . . was in the same class" and consequently did not disclose this relationship. The juror's business relations as a small advertiser with the defendant did not vitiate the selection of the jury. *Roberts* v. *Public Service Co.,* 17 F. Supp. 63. The Trial Court's implied finding that he was in fact indifferent was not erroneous as a matter of law. *State* v. *Sawtelle,* 66 N. H. 488.

The juror's conversations with the defendant's agent were misconduct. The crucial question is whether the juror's misconduct produced the verdict and not whether he misbehaved during the trial. *Blodgett* v. *Park,* 76 N. H. 435, 438; *Caldwell* v. *Yeatman,* 91 N. H. 150, 155. After careful examination of the juror by the Court, evidence produced by the parties and their briefs, the Trial Court has denied the motion for mistrial and the motion to set aside the verdict. This determination is entitled to great weight and is in effect a finding that the verdict was not affected. *State* v. *Ellard,* 95 N. H. 217, 223. The exceptions relating to this issue are overruled.

The Court instructed the jury that the plaintiff was bound to perform faithfully and efficiently such duties as were assigned to him by the defendant and that the jury in this respect was to consider all the evidence with reference to the plaintiff's work, and his attitude toward his work and superiors. The defendant's request number 5 sought an application of this terminology with specific reference to friendly relations, cooperation, insubordination, disloyalty and obedience. Whether such special emphasis would be a comment on the evidence or not, we are of the opinion that the instruction given sufficiently pointed up the matter raised by the defendant's request. *Bourget* v. *Company*, 98 N. H. 237, 244; *Cleveland* v. *Reasby*, 92 N. H. 518, 521.

Defendant's request number 14 that "suspension" and "leave of absence" as used in defendant's letter of October 5, 1949, were synonymous was properly denied. The jury were entitled to consider the letter for what it was worth under the circumstances without circumscribing instructions from the Court. What the defendant did and said was subject to more than one interpretation and therefore the Court properly refused to place a single meaning on it.

Request number 16 sought to deduct from the plaintiff's damages amounts paid for his daily board and weekly travel expenses. A deduction from the plaintiff's damages of any saving to the plaintiff due to nonperformance of the contract is generally allowed. Restatement, Contracts, s. 335; 5 Williston, Contracts, s. 1338. However the "employer is not concerned with the living expenses of his employee, and the fact that they were lessened after his discharge does not affect the damages which may be recovered, the expenses forming no part of the cost of the performance of the contract." 3 Sutherland, Damages (4th *ed.*) 2566, 2567; *Gates* v. *School District*, 57 Ark. 370. See McCormick, Damages, s. 41.

Request number 18 that the burden of proof on the issue of damages was on the plaintiff was adequately covered by the Court's charge. *Williams* v. *Walker*, 95 N. H. 231, 236; *Lamontagne* v. *Railway*, 97 N. H. 6, 11. There was evidence in the record which warranted the Trial Court in refusing to give requests numbers 19, 20 and 24 which told the jury that there was no evidence of certain disputed matters in the litigation. Request number 21 that the defendant's purpose in granting a leave of absence to the plaintiff was not material in determining whether

the defendant committed a breach of the contract was inconsistent with the Court's instruction and the applicable law and was properly denied. See *Russo* v. *Slawsby,* 84 N. H. 89, 91.

There was reserved for determination by this Court the question "whether the plaintiff, in the event the verdict is sustained, is entitled to recover further damages on account of any additional federal income taxes he may be required to pay by reason of the receipt of the recovery in one year." Since it does not appear with certainty that the plaintiff will be required to pay additional federal income taxes by reason of the receipt of damages in one year in lieu of salary for several years under the contract, we do not now decide the transferred question. *Dumas* v. *Company,* 92 N. H. 140. If the tax is required to be paid, the question may then be transferred to this court.

*Exceptions overruled.*

All concurred.