Andrea VAN STEENHOUSE, Plaintiff–
Appellant and Cross–Appellee,

v.

JACOR BROADCASTING OF COLORA-
DO, INC. and Lee Larsen, Defendants–
Appellees and Cross–Appellants.

No. 95CA0284.

Colorado Court of Appeals,
Div. I.

June 27, 1996.

As Modified on Denial of Rehearing
Aug. 8, 1996.

Certiorari Granted March 31, 1997.

Gorsuch Kirgis, L.L.C., Stephen A. Weinstein, Mary C. Kloepfer, Maury L. Cuje, Denver, for Plaintiff–Appellant and Cross–Appellee.

Hall & Evans, L.L.C., Daniel R. Satriana, Jr., Pamela Skelton, Denver, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge CRISWELL.

In this action involving the breach of an employment contract, plaintiff, Andrea Van Steenhouse, appeals, and defendants, Jacor Broadcasting of Colorado, Inc. (Jacor) and Lee Larsen, cross-appeal from the trial court's judgment in favor of plaintiff, its award of damages and costs, and its refusal to award attorney fees. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiff is a psychologist who is also a radio talk show host. In June 1991, plaintiff entered into an agreement (the Agreement) with Jacor pursuant to which she was to host a talk show on radio station KOA, which was owned and operated by Jacor. The Agreement, which was for a three-year term commencing August 8, 1991, provided that, for her services, plaintiff would be paid a base salary of $100,000 for her first year, $105,000 for her second year, and $112,000 for her third year. Plaintiff was also to receive a yearly performance bonus based upon certain specified increases in her listening audience.

Paragraph 1(a) of the Agreement provided that plaintiff's duties included: "The rendition of services to 85 KOA as a Radio Talk Show Host on air from 2:00 p.m. to 4:00 p.m. Monday through Friday (any change in such hours to be mutually agreed upon)...." Paragraph 1(b), which dealt with plaintiff's promotional duties, provided that her "actual duties hereunder ... shall always be those believed to be in the best interest of 85 KOA as determined in 85 KOA's discretion." The Agreement also contained a non-compete provision which provided that, upon termination of plaintiff's employment for any reason, other than by Jacor's termination of her,

plaintiff was not to render "on-the-air services" in the Denver area for a period of 180 days. There was also a provision that plaintiff was to receive severance pay equal to 13 weeks' compensation should Jacor terminate her.

Pursuant to the Agreement, plaintiff hosted a talk show on KOA during weekdays from 2:00 to 4:00 p.m. until late 1993. At that time, Jacor acquired the rights to broadcast a popular nationally syndicated talk show, and it committed to broadcast that show during a major portion of the time that the Agreement called for plaintiff to be on air. Jacor offered to allow plaintiff to continue to broadcast on KOA for a one-hour period, or to allow her to broadcast for two hours on another station being acquired by it, with one hour of her show being simulcast on KOA. She rejected both offers.

On January 3, 1994, Jacor removed plaintiff's show from its programming lineup and replaced it with the nationally syndicated talk show. Thereafter, plaintiff did not broadcast for Jacor, either on KOA or the other station. Nevertheless, Jacor continued to pay plaintiff her base salary until the three-year term of the Agreement expired by its terms in August 1994.

Immediately after plaintiff's show was removed from KOA's programming line-up, plaintiff commenced the instant action against Jacor and Lee Larsen, general manager of KOA, seeking, among other things, a preliminary and permanent injunction enjoining defendants from enforcing the non-compete provision of the Agreement, damages for Jacor's willful and wanton breach of the Agreement, and damages and penalties under the Colorado Wage Claim Act, § 8–4–101, et seq., C.R.S. (1986 Repl.Vol. 3B).

Defendants counterclaimed, asserting that it was plaintiff who had breached the Agreement. They also requested an award of attorney fees, both under the Wage Claim Act and under § 13–17–102, C.R.S. (1987 Repl. Vol. 6A).

Plaintiff's request for a preliminary injunction was denied. On his motion and over plaintiff's objection, Larsen was dismissed from the case.

At the conclusion of a later bench trial, the trial court adopted detailed findings and conclusions in which it determined that, in certain limited employment situations, an employment contract can be breached by an employer who refuses to allow the employee to work, even though the employer continues to pay the employee's salary (a breach through "idle-ization"). The trial court also concluded that Jacor's actions in refusing to allow plaintiff to be on the air during the two-hour period called for by the Agreement constituted such a breach. It rejected Jacor's counterclaim.

The trial court awarded plaintiff damages of $3,518, representing that portion of plaintiff's performance bonus for the period she was off the air, but it declined to award her damages for emotional distress, for her alleged loss of professional reputation, or for any other item of damage requested. It granted plaintiff's request for costs only in part, and it denied all parties' requests for fees.

### I.

### Breach of the Agreement

#### A.

■ Jacor first contends that the trial court erred, as a matter of law, in concluding that an employer can breach an employment contract by refusing to provide work for the employee, so long as the employer continues to pay that employee's salary. We disagree.

■ Generally, an employer has no duty to provide an opportunity for its employee to work, so long as the employer pays the employee the agreed-upon salary. However, an exception to this general rule has been recognized in the following circumstances:

If the agent's compensation is not dependent upon the amount of work done, as where he is to receive a fixed salary, a promise by the principal to furnish him with work is inferred from a promise to employ only if it is found that the anticipated benefit to the agent from doing the work is a material part of the advantage to be received by him from the employment. This anticipated benefit may be the

acquisition of skill or reputation by the employee or the acquisition of subsidiary pecuniary advantages, *as in the case of the employment of public performers whose reputation will be enhanced by their appearance or diminished by their failure to appear . . . .*

Restatement (Second) of Agency § 433 comment c (1958) (emphasis supplied).

In *McLaughlin v. Union–Leader Corp.,* 99 N.H. 492, 116 A.2d 489 (1955), an employee was employed by a newspaper as an advertising manager, but he was placed on an indefinite leave of absence, with pay, and a replacement was hired to perform his job duties. In concluding that the employee had presented a proper claim for breach of contract, the court noted that it would be an unreasonable construction of the employment contract to conclude that the employee was to have the title of Advertising Manager, but was to be placed on inactive status, and that "the defendant's right to assign the plaintiff's duties and responsibilities does not extend to the point where the assignment would constitute in effect a virtual replacement and demotion." *McLaughlin v. Union–Leader Corp., supra,* 99 N.H. at 496, 116 A.2d at 493. *See also Colvig v. RKO General, Inc.,* 232 Cal.App.2d 56, 42 Cal.Rptr. 473 (1965) (contract breach would occur if radio station refused to broadcast radio announcer, but continued to pay his salary, in violation of confirmed arbitration award). *See generally* Annotation, *Reduction in Rank or Authority or Change of Duties as Breach of Employment Contract,* 63 A.L.R.3d 539 (1975).

Here, plaintiff claimed that Jacor's breach of the Agreement, by refusing to broadcast her show on KOA for the two consecutive hours called for, resulted in her being off the air for eight months. As a result, she says she suffered damages because she remained out of public notice during that time, which lessened her value as a performer and public figure. Given plaintiff's occupation and the nature of her claim, we conclude that the trial court properly recognized that plaintiff's claim of a contract breach by Jacor was a proper one.

## B.

Jacor next contends that, even if a claim such as that asserted by plaintiff here is one recognized by law, nevertheless, the trial court erred in determining that it breached the Agreement. Specifically, it argues that, under the Agreement, it had the right unilaterally to assign plaintiff any duties, including the right to direct plaintiff to broadcast on another station, and that plaintiff breached the Agreement by refusing to do so. We disagree.

Here, the Agreement specifically provided that plaintiff was to broadcast on KOA during a specific two-hour period and that "any change in such hours" was to be "mutually agreed upon." Contrary to Jacor's assertion, a general provision of the Agreement, which controlled plaintiff's off-air, promotional activities, allowing Jacor to assign other duties to her, cannot qualify or supersede the more specific terms governing plaintiff's on-air hours. *See Denver Joint Stock Land Bank v. Markham,* 106 Colo. 509, 107 P.2d 313 (1940); *Holland v. Board of County Commissioners,* 883 P.2d 500 (Colo.App.1994).

The Agreement imposed upon Jacor the obligation not to refuse to allow plaintiff to broadcast at the time and on the station specifically called for by its terms. Nothing within its terms authorized Jacor to engage in unilateral action to deprive plaintiff of a portion of the benefits that it contracted to provide her.

Given the circumstances portrayed by this record, we conclude that the trial court properly found that Jacor violated the terms of the Agreement by removing plaintiff from the agreed-upon on-air time period. *See Town of Breckenridge v. Golforce, Inc.,* 851 P.2d 214 (Colo.App.1992) (finding of breach of contract to be upheld if competent evidence supports findings).

As a corollary to its assertion that the court erred in determining that it breached the Agreement, Jacor also argues that error was committed by the trial court in rejecting its counterclaim. That counterclaim asserted that plaintiff violated the Agreement by refusing to broadcast either on KOA at times

other than the period set forth in the Agreement or on another station.

However, this claim was based on the same faulty interpretation of the Agreement as was Jacor's assertion that it had not breached its terms. Our disposition of the former claim of error also dictates the rejection of this assertion.

### C.

■ Plaintiff contends that the trial court erred in finding that Jacor's breach of the Agreement was not willful and wanton and, accordingly, in refusing to award damages for emotional distress. We reject this contention.

■ Proof of a willful or wanton breach of contract will support an award of damages for emotional distress, if such distress is a natural and probable consequence of that breach. *Trimble v. City and County of Denver,* 697 P.2d 716 (Colo.1985).

■ For this purpose, a willful and wanton breach is more than a mere passive breach. It is, rather, "an intentional breach, involving willful, wanton, or insulting conduct, and without any legal justification or excuse." *Smith v. Hoyer,* 697 P.2d 761, 764 (Colo.App. 1984). *See McCreery v. Miller's Groceteria Co.,* 99 Colo. 499, 64 P.2d 803 (1936).

Here, while we have rejected Jacor's interpretation of the Agreement, we cannot say that its position regarding the Agreement's meaning was a wholly unreasonable interpretation. Further, the evidence demonstrated that Jacor had attempted to accommodate plaintiff and had offered to allow her to continue to broadcast her program, albeit at different times. And, it treated the Agreement as remaining in effect by continuing to pay plaintiff her salary throughout the full term of the Agreement.

■ Whether a breach of contract is willful or wanton is a question for the fact-finder. *See Trimble v. Denver, supra.* The evidence of Jacor's conduct supports the trial court's finding that its breach did not rise to that level here.

### II.

### Damages

Plaintiff next contends that the trial court erred in refusing to award her: (1) damages for her loss of reputation equal to the difference between the compensation she received pursuant to the Agreement with Jacor and a later employment contract with a competing radio station; (2) severance pay from Jacor; (3) a bonus that was paid to all KOA employees, except plaintiff; (4) damages to plaintiff's private counseling practice; and (5) expenses in mitigating her damages. We conclude that no error was committed in any of these respects.

### A.

Almost immediately after the Agreement with Jacor expired by its terms, plaintiff entered into an employment agreement to host a similar talk show with another Denver-based radio station that competed with KOA. This agreement, which was for a two-year term with an option for a third year, provided that, in the first contract year, plaintiff was required to broadcast for three hours, rather than two, each weekday, for a $75,000 base salary; that, in the second year, plaintiff's hours were to be reduced to two for which she would receive the same salary; and that, in the third option year, she would be paid $90,000 for a two-hour show. It also contained other provisions that could have resulted in additional compensation to her.

■ Plaintiff argues that her eight-month absence from broadcasting caused her to be unable to command as large a salary as she could have if she had been continuously on the air and that, accordingly, she should have been awarded the difference in pay. We disagree.

Preliminarily, we note that, while the parties and the trial court referred to these claimed damages as those for "loss of reputation," they may be more accurately described as damages for a claimed diminution in plaintiff's earning capacity.

Plaintiff does not assert that her general reputation as a professional radio talk show host was tarnished by her termination by

Jacor. *See Williams v. District Court,* 866 P.2d 908 (Colo.1993)(damage for loss of reputation recoverable in defamation action). Rather, she asserts that being out of public notice for eight months reduced her worth as a radio personality. This type of claim has been recognized as separate from any claim based upon damage to reputation. *See Redgrave v. Boston Symphony Orchestra, Inc.,* 855 F.2d 888 (1st Cir.1988), *cert. denied,* 488 U.S. 1043, 109 S.Ct. 869, 102 L.Ed.2d 993 (1989)(damages awarded to entertainer for symphony's cancellation of performance causing her not to receive job offers she otherwise would have received; claim distinguished from claim for damage to reputation).

Here, however, there was a conflict in the evidence whether plaintiff's eight-month hiatus did, in fact, affect her worth as a radio personality. There was substantial evidence that it did not. Further, there was also evidence that, if her absence from the airwaves affected her worth, such difference was not reflected by the difference in salaries under the two employment agreements.

Based on this evidence, the trial court, as the fact-finder, determined that plaintiff had not established her claim for damages based upon a loss of earning capacity. Being supported by the evidence, that determination will not be overturned on appeal.

### B.

Plaintiff next contends that the trial court erred in not awarding her the 13 weeks of severance pay called for by the Agreement had she been terminated by Jacor. Again, we disagree.

Plaintiff received her base salary from Jacor for the entire initial term of the Agreement, including the eight-month period when she was not broadcasting, and she was awarded that portion of her performance bonus for the period she was off the air.

Plaintiff would not have received severance pay had the Agreement been fully performed. Hence, to award her such pay, as well as the other damages awarded, would place her in a better position than she would have occupied had there been no breach.

Hence, the trial court properly refused to award her such damages. *See Smith v. Hoyer, supra,*

### C.

We also reject plaintiff's contention that the trial court erred in refusing to award her a year-end bonus.

The record here reveals that all hourly and salaried KOA employees, except plaintiff, received a bonus at the end of 1993 based on Jacor's profits for that year. However, KOA's general manager testified that it was within his discretion to decide who was to receive this bonus. Consistent with such testimony, plaintiff admitted that she had never been promised a bonus.

In this circumstance, we conclude that the trial court's refusal to award damages based on such a bonus is supported by the record.

### D.

Plaintiff next contends that the trial court erred in refusing to award her damages for losses allegedly suffered by her private counseling practice. We disagree.

The trial court found that, as a result of being unable to broadcast, plaintiff had more time to devote to her private practice. As a result, she received a greater income from her practice in 1994 than she had previously. This finding is supported by the testimony of plaintiff's own expert economist.

### E.

We also find unpersuasive plaintiff's final argument with respect to the damage award, that the trial court erred in refusing to award the expenses allegedly incurred by her in mitigating the damage caused by Jacor's breach.

A party injured by a breach of contract has a duty to make reasonable efforts to reduce the damage sustained. Hence, a plaintiff is entitled to recover expenditures made in attempting to mitigate damages. *Tull v. Gundersons, Inc.,* 709 P.2d 940 (Colo.1985).

However, the trial court here refused to consider the expenses incurred by plaintiff because it awarded damages only for the lost portion of her performance bonus, and nothing that plaintiff did or could do would have mitigated those damages.

Again, the record supports this determination, and it will not be disturbed.

### III.

### Costs and Attorney Fees

#### A.

■ Plaintiff asserts that the trial court erred in reducing the costs requested by her, without holding a hearing upon the disputed issues and without adopting specific findings of fact. We agree, at least in part.

Plaintiff submitted an itemized bill of costs totalling $14,995.01. Jacor filed written objections to substantially all of the costs requested. Without making any findings, the trial court awarded plaintiff costs in the amount of $225.

■ In order for this court adequately to assess the propriety of a trial court's cost award, that court must adopt sufficient findings so as to disclose the basis for its decision. *Fenton v. Fibreboard Corp.*, 827 P.2d 564 (Colo.App.1991), *rev'd in part on other grounds*, 845 P.2d 1168 (Colo.1993).

Here, because of a lack of findings, we cannot pass upon the validity of the trial court's actions in substantially reducing the costs requested. Hence, a remand to the trial court for the adoption of findings is necessary. Such findings may be adopted either on the existing record, if that record is sufficient, or if not, after an evidentiary hearing.

#### B.

■ The trial court denied all requests for attorney fees without explanation or findings. Defendants contend that the trial court erred in denying their request for attorney fees. We agree in part.

#### 1.

Both Larsen and Jacor first assert that they were entitled to fees under § 13–17–102, C.R.S. (1987 Repl.Vol. 6A) because plaintiff asserted frivolous and groundless claims against them. We disagree.

Preliminarily, we note that, contrary to plaintiff's assertion, this court possesses jurisdiction to decide Larsen's cross-appeal. Even though Larsen was dismissed as a defendant at an early stage, his request for attorney fees was not acted on by the trial court until it entered findings and conclusions at the end of trial. Moreover, the trial court's dismissal of Larsen was never certified as a final judgment pursuant to C.R.C.P. 54(b), and Larsen filed a timely notice of cross-appeal from the trial court's eventual judgment. *See Mission Viejo Co. v. Willows Water District*, 818 P.2d 254 (Colo.1991).

■ The award of attorney fees under § 13–17–102 is discretionary, and a trial court's determination will not be disturbed on review if supported by the evidence. *In re Marriage of Hahn*, 628 P.2d 175 (Colo. App.1981). Further, even if the trial court determines that a claim is frivolous or groundless, it is not compelled to grant attorney fees. *Pietrafeso v. D.P.I., Inc.*, 757 P.2d 1113 (Colo.App.1988).

As to Larsen's claim, the record reveals that plaintiff claimed Larsen told her that he intended to enforce the non-compete provision of the Agreement and that he was made a party to this action to enjoin him, as general manager of KOA, from doing so. While the request for injunctive relief was initially denied and ultimately became moot, there is no support for the assertion that such request reflects a frivolous or groundless claim.

With respect to Jacor's claim that plaintiff's request for damages for emotional distress was frivolous and groundless, plaintiff testified at length about the emotional distress, including the resulting physical manifestations, that she allegedly suffered as a result of the breach by Jacor and her resulting need to obtain counseling and other medical attention. Moreover, a psychologist, who counseled plaintiff after she was taken off the air by Jacor, testified that, at that time,

plaintiff suffered from an adjustment disorder caused by her being removed from broadcasting on KOA.

Hence, there was an evidentiary basis for the challenged claims, and thus, the trial court properly refused to characterize them as frivolous or groundless. *See Pietrafeso v. D.P.I., Inc., supra; Price v. Conoco, Inc.,* 748 P.2d 349 (Colo.App.1987).

2.

■ We agree with Jacor, however, that it was entitled to an award of attorney fees as the winning party on plaintiff's claim under the Colorado Wage Claim Act. *See* § 8–4–114, C.R.S. (1986 Repl.Vol. 3B).

That statute provides that, in an action by an employee to recover wages not paid by an employer, the "winning party" is to recover his or her attorney fees. The statute mandates such an award; it leaves nothing to the court's discretion. *Keeton v. Rike,* 38 Colo.App. 505, 559 P.2d 262 (1977).

Further, under the statute, "[i]t is the circumstances necessitating the *commencement* of suit" that gives rise to an obligation to pay attorney fees. *Hofer v. Polly Little Realtors, Inc.,* 37 Colo.App. 86, 89, 543 P.2d 114, 117 (1975) (emphasis supplied).

The Wage Claim Act is designed to compel the timely payment by the employer of all compensation earned by and due to the employee at the time of that employee's termination. Section 8–4–104(1), C.R.S. (1995 Cum.Supp.). Hence, it is irrelevant for purposes of this statute whether the employee's termination was authorized by, or was in violation of, the employment agreement. *Lee v. Great Empire Broadcasting, Inc.,* 794 P.2d 1032 (Colo.App.1989).

Plaintiff dismissed her Wage Claim Act claim before the court could pass upon it. While plaintiff asserts that this dismissal came shortly before the start of trial, the record contains no reference to any dismissal at that point. The only reference to such dismissal came from plaintiff's counsel at the end of plaintiff's evidence. In either event, however, the withdrawal of that claim amounted to a dismissal with prejudice.

Under such circumstances, Jacor must be considered to be the "winning party" with respect to plaintiff's statutory wage claim.

And, this is true even though plaintiff prevailed on her claim for contract breach. *See Langseth v. County of Elbert,* 916 P.2d 655 (Colo.App.1996).

In reaching this conclusion, we specifically do not address the question whether there would be a "winning party" if either a withdrawal of the statutory claim by the employee or a voluntary confession of the claim by an employer comes at a much earlier stage in the proceedings.

Of course, an award of such fees under the statute should compensate Jacor only to the extent that legal services were required to defend against the statutory claim. Fees for services to defend against plaintiff's other claims are not recoverable under § 8–4–114. Nevertheless, Jacor is entitled to an award of attorney fees to this limited extent, and the cause will be remanded to the trial court for the entry of such an award. *See Porter v. Castle Rock Ford Lincoln Mercury, Inc.,* 895 P.2d 1146 (Colo.App.1995).

The judgment of the trial court is affirmed, except that the trial court's award of costs and its order refusing to award to Jacor its attorney fees under § 8–4–114 is reversed, and the cause is remanded to that court for further proceedings consistent with the views set forth in this opinion.

METZGER and JONES, JJ., concur.