Andrea VAN STEENHOUSE,
Petitioner/Cross–
Respondent,

v.

JACOR BROADCASTING OF COLORADO, INC.; and Lee Larsen, Respondents/Cross–Petitioners.

No. 96SC631.

Supreme Court of Colorado,
En Banc.

April 27, 1998.

Gorsuch Kirgis LLP, Stephen A. Weinstein, Mary C. Kloepfer, Maury L. Cuje, Arun Das, Denver, for Petitioner/Cross–Respondent.

Hall & Evans, L.L.C., Daniel R. Satriana, Jr., Pamela Skelton, Denver, for Respondents/Cross–Petitioners.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' opinion in *Van Steenhouse v. Jacor Broadcasting of Colorado, Inc.*, 935 P.2d 49 (Colo.App.1996), to determine whether the court of appeals correctly determined that Dr. Andrea Van Steenhouse (Van Steenhouse) stated a claim for breach of contract based on the Restatement (Second) of Agency, § 433 cmt. c (1953). We also granted certiorari to consider whether the court of appeals properly found that Jacor Broadcasting of Colorado, Inc. (Jacor) qualified as a "winning party" entitled to reasonable attorney fees pursuant to section 8–4–114, 3

C.R.S. (1997). We affirm in part and reverse in part.

### I.

Jacor owns and operates Newsradio 85 KOA (KOA). Van Steenhouse is a radio personality and practicing psychologist. On June 18, 1991, Van Steenhouse signed a three-year agreement as a radio talk show host with KOA (the Agreement). The Agreement provided that Van Steenhouse was to render these services "on air from 2:00 p.m. to 4:00 p.m. Monday through Friday (any change in such hours to be mutually agreed upon)." Van Steenhouse was to receive a base salary of $100,000 for the first year, $105,000 for the second year, and $112,000 for the third year. In addition, Van Steenhouse was eligible for a performance bonus, depending on KOA's audience share during her show.[1]

In October, 1993, Jacor acquired the rights to broadcast the Rush Limbaugh Show, which conflicted with the 2:00 p.m to 4:00 p.m. time slot occupied by Van Steenhouse. As a result, Jacor proposed several alternatives to Van Steenhouse, including a two-hour time slot on AM 760 KTLK, Jacor's newly purchased station, with one hour to be broadcast simultaneously on KOA. However, none of Jacor's proposals included two consecutive hours on KOA. The parties failed to reach agreement, and on January 3, 1994, Jacor started broadcasting Rush Limbaugh in place of Van Steenhouse. Although Jacor

paid her base salary until the expiration of the Agreement in August 1994, Van Steenhouse did not work as a radio talk show host for a period of approximately eight months.[2]

On January 12, 1994, Van Steenhouse sued Jacor and KOA's general manager Lee Larsen in Denver District Court (the trial court), alleging various claims, including breach of contract and violation of the Colorado Wage Claim Act, sections 8–4–101 to –127, 3 C.R.S. (1997) (the WCA).[3] Van Steenhouse eventually dropped the WCA claim.[4] As a result, Jacor argued that it was entitled to attorney fees as the "winning party" on the WCA claim pursuant to section 8–4–114, 3 C.R.S. (1997).[5] At trial, the parties focused on the breach of contract claim.

The trial court concluded that although Jacor continued to pay Van Steenhouse's base salary, it materially breached the Agreement by preventing her from performing as a talk show host according to the terms of the Agreement. Consequently, the trial court awarded Van Steenhouse $3,518.00 plus costs, which represented the performance bonus that she could have received by broadcasting during the last eight months of the Agreement.[6] The trial court refused to award attorney fees to either side.

The court of appeals affirmed the trial court's finding that Jacor breached the Agreement. However, the court of appeals concluded that Jacor was entitled to attorney fees as the "winning party" on the WCA

---

1. In 1993, Van Steenhouse received a performance bonus of about $6,000.

2. Several provisions in the Agreement addressed Van Steenhouse's ability to seek employment outside KOA. First, a covenant not to compete directed Van Steenhouse not to provide on-the-air services to any other radio station in the Denver area for 180 days in the event she terminated the Agreement. Second, Van Steenhouse was to render services exclusively to KOA during the life of the Agreement. Finally, Jacor had the right to terminate the Agreement and release Van Steenhouse upon payment of thirteen weeks' compensation. Instead of exercising this right, Jacor paid Van Steenhouse until the expiration of the Agreement.

3. The trial court dismissed all claims against Larsen.

4. The record does not clearly show when the claim was dismissed. Van Steenhouse insists that she dropped the claim before trial, whereas Jacor contends that Van Steenhouse abandoned the claim after presenting her case. According to the record, the trial court never formally dismissed the claim.

5. Section 8–4–114 provides that a reasonable attorney fee must be awarded to the "winning party" on a WCA claim. Jacor also sought attorney fees pursuant to section 13–17–102, 5 C.R.S. (1997).

6. Van Steenhouse also sought damages for loss of professional reputation based on Jacor's refusal to broadcast her show. Although the trial court held that this refusal constituted a breach, it declined to award damages, finding them to be speculative.

claim and remanded for a determination as to the amount of the fee award.[7]

## II.

Jacor argues that an employee's claim for breach of contract cannot be predicated solely on an employer's failure to provide an opportunity to work. We disagree.

Ordinarily, an employment agreement does not obligate an employer to furnish work for an employee. *See* Restatement (Second) of Agency § 433 (1953); *see also Colvig v. RKO General, Inc.*, 232 Cal. App.2d 56, 42 Cal.Rptr. 473, 480 (1965); *McLaughlin v. Union–Leader Corp.*, 99 N.H. 492, 116 A.2d 489, 493 (1955). However, such an obligation may be inferred depending on "the circumstances under which the agreement for employment is made or the nature of the employment." Restatement § 433. In particular, an obligation to furnish work arises if the employee materially benefits from performing the duties described in the agreement:

> [A] promise by the principal to furnish [the agent] with work is inferred from a promise to employ only if it is found that the anticipated benefit to the agent from doing the work is a material part of the advantage to be received by [the agent] from the employment. The anticipated benefit may be the acquisition of skill or reputation by the employee or the acquisition of subsidiary pecuniary advantages, as in the case of the employment of public performers whose reputation will be enhanced by their appearance or diminished by their failure to appear....

Restatement § 433 cmt. c. Relying on comment c, several courts have held that when an employer fails to furnish the kind of work specified in an employment agreement, the employee has a cause of action for breach of contract. *See McKinney v. Gannett Co.*, 660 F.Supp. 984, 1014–15 (D.N.M.1981); *Colvig*, 42 Cal.Rptr. at 481; *McLaughlin*, 116 A.2d at 493; *see also Hayes v. Resource Control, Inc.*, 170 Conn. 102, 365 A.2d 399, 402 (1976) (affirming breach of contract judgment in favor of managing vice president who was unjustifiably demoted to salesman on commission); *Mair v. Southern Minn. Broad. Co.*, 226 Minn. 137, 32 N.W.2d 177, 178–79 (1948) (affirming breach of contract judgment in favor of radio station manager who was stripped of authority to issue orders and direct station activities); *Sigmon v. Goldstone*, 116 A.D. 490, 101 N.Y.S. 984, 986 (1906) (recognizing employee's claim for breach of contract when employer paid weekly salary but prevented employee from working as skilled clothes designer).[8]

Of these cases, we find *Colvig* the most instructive. *Colvig* involved a radio announcer who was fired by his employer but restored to his position by court order.[9] Although the employer paid all salary due, it did not allow the announcer to resume his broadcasting duties. Quoting comment c, the California District Court of Appeal held that the announcer stated a cause of action for breach of contract.[10] The court explained that due to the nature of the announcer's profession, the opportunity to perform on the air was a material part of his employment contract:

> [P]laintiff, as a highly professional man, was to be given the opportunity to exercise

---

**7.** The court of appeals also remanded for findings as to why the trial court awarded Van Steenhouse's $225 in costs instead of her requested amount of $14,995.01.

**8.** In this case, the trial court relied primarily on *McLaughlin v. Union–Leader Corp.*, 99 N.H. 492, 116 A.2d 489 (1955), which was a pioneering case in recognizing a breach of employment contract based on the principles of comment c. In *McLaughlin*, a newspaper publisher placed its advertising manager on indefinite leave with pay and hired another individual to assume his duties. Referring to comment c, the Supreme Court of New Hampshire explained that even

though the advertising manager retained his title and pay, the publisher breached the contract by depriving the manager of his duties and responsibilities. *See id.* 116 A.2d at 492–93.

**9.** The announcer initially won restoration through arbitration. The arbitration award was then confirmed by court order.

**10.** The announcer sued to enforce the court order, which the court treated as a contract. *See Colvig*, 42 Cal.Rptr. at 479 ("[A] judgment is a contract upon which the parties may maintain a separate action.").

his abilities, an anticipated benefit of which was the acquisition of a reputation in the public eye which would be enhanced by his appearance through the media of the radio waves and diminished by his failure to make such appearance.

*Colvig*, 42 Cal.Rptr. at 481.

Similarly, the trial court in this case held that Jacor breached the Agreement by depriving Van Steenhouse of the opportunity to perform as a talk show host on KOA. Pursuant to the Agreement, Van Steenhouse was to host her show on KOA Monday through Friday from 2:00 to 4:00 p.m. The Agreement specified that "any change in such hours [would] be mutually agreed upon." Nevertheless, Jacor refused to broadcast Van Steenhouse during this time slot and eventually removed her show from KOA's broadcast lineup. As a result, Van Steenhouse lost the opportunity to build and maintain her professional marketability.[11] *See Colvig*, 42 Cal. Rptr. at 481 (explaining that a radio personality, whose professional reputation may be enhanced by performing on the air, has a special interest in carrying out contractual duties); Restatement § 433, cmt. c (noting that public performers may enhance their reputations by doing the work specified in an employment agreement). In addition, Van Steenhouse lost the opportunity to earn a 1994 performance bonus.[12]

Jacor deprived Van Steenhouse of these benefits by refusing to broadcast her show in the time slot specified by the clear terms of the Agreement. Accordingly, we hold that Van Steenhouse stated a valid claim for breach of contract.

### III.

Jacor also contends that because Van Steenhouse voluntarily dismissed her WCA claim, it qualifies as a "winning party" entitled to attorney fees pursuant to section 8–4–114. Again, we disagree.

In an action to recover wages under the WCA, section 8–4–114 mandates reasonable attorney fees for the winning party:

Whenever it is necessary for an employee to commence a civil action for the recovery or collection of wages and penalties due as provided by sections 8–4–104 and 8–4–105 [the WCA], the judgment in such action shall include a reasonable attorney fee in favor of the *winning party*, to be taxed as part of the costs of the action.

§ 8–4–114 (emphasis added). This section indemnifies employees against the costs of bringing a successful claim while protecting employers from nuisance litigation. *See Hartman v. Freedman*, 197 Colo. 275, 280, 591 P.2d 1318, 1322 (1979). Thus, either the employee or the employer may be the winning party under the statute. *See id.*

Winning parties under section 8–4–114 are analogous to "prevailing parties" eligible for attorney fees under 42 U.S.C. § 1988 (1994). *See Davidson v. Bonteso Gold Corp.*, 851 P.2d 254, 256 (Colo.App. 1993). Section 1988 provides that "[i]n any action or proceeding to enforce [certain civil rights laws], the court, in its discretion, may allow the *prevailing party*, other than the United States, a reasonable attorney fee as part of the costs." § 1988 (emphasis added). For purposes of section 1988, a procedural victory is insufficient to justify an award of attorney fees. *See Doe v. Busbee*, 684 F.2d 1375, 1380 (11th Cir.1982). In order to qualify as a prevailing party, a litigant must receive "at least some relief on the merits." *See Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987).

In this case, Van Steenhouse voluntarily dismissed her WCA claim. Consequently, the trial court never ruled on the claim and

---

11. Besides losing her audience at KOA, Van Steenhouse was unable to maintain her visibility by broadcasting on another radio station. Although Van Steenhouse sought employment with another Denver-based AM station, the station refused to hire Van Steenhouse due to the uncertainty surrounding the Agreement with Jacor. However, after the Agreement expired and Jacor stopped paying Van Steenhouse, the other station hired her almost immediately.

12. Pursuant to the Agreement, Van Steenhouse was eligible to receive a performance bonus each year based on KOA's audience share during her show. However, due to the cancellation of her show, Van Steenhouse generated no audience rating for 1994, and she received no performance bonus from Jacor.

never provided formal relief on the merits for either party. Moreover, while both parties enjoyed some out-of-court relief, neither party prevailed to the extent necessary to justify an award of attorney fees. On one hand, the voluntary dismissal relieved Jacor of the need to contest the WCA claim at trial. On the other hand, Jacor provided some of the relief sought in Van Steenhouse's WCA claim when it paid her overdue salary.[13] In these circumstances, we conclude that neither Jacor nor Van Steenhouse qualifies as the winning party for purposes of section 8–4–114.

## IV.

We hold that Van Steenhouse states a valid claim for breach of contract. We also hold that neither party qualifies as a winning party entitled to attorney fees under section 8–4–114. Accordingly, we affirm in part and reverse in part.

SCOTT, Justice, does not participate.

---

13. When her show was canceled by Jacor on January 3, 1994, Van Steenhouse was entitled to certain accrued but unpaid salary. Jacor failed to pay Van Steenhouse this amount on the next scheduled payday. Van Steenhouse immediately filed the WCA claim, which included a demand for "all compensation earned up to January 3, 1994." Shortly thereafter, Van Steenhouse received a salary check from Jacor.