Marqueece FOSTER, a minor, by Dannie FOSTER, his grandmother and next friend; and Lexus C. Foster, a minor, by Brenda Craney, her mother and next friend, Plaintiffs–Appellants,

v.

Travis B. PHILLIPS, Defendant–Appellee.

No. 98CA0350.

Colorado Court of Appeals, Div. IV.

Sept. 30, 1999.

Rehearing Denied Oct. 28, 1999.

Certiorari Granted and Judgment Vacated Aug. 21, 2000.*

---

* Petition for Writ of Certiorari GRANTED as to reframed issue 2(b)—Whether the court of appeals erred in affirming the award of Defendant's unallocated bill of costs—and the judgment of the Colorado Court of Appeals on the award of the bill of costs is vacated. The case is remanded to the Colorado Court of Appeals for reconsideration in light of *Haystack Ranch, LLC v. Fazzio,* 997 P.2d 548 (Colo.2000).

Law Office of James L. Gillies, P.C., James L. Gillies, Conifer, Colorado; Clark & Stant, P.C., Stephen C. Swain, Virginia Beach, Virginia, for Plaintiffs–Appellants.

Walberg, Dagner & Tucker, P.C., Deana R. Dagner, Matthew A. Holmes, Wendelyn K. Walberg, Englewood, Colorado, for Defendant–Appellee.

Opinion by Judge BRIGGS.

Plaintiffs, Marqueece Foster (son), a minor, by Dannie Foster, his grandmother and next friend, and Lexus C. Foster (daughter), a minor, by Brenda Craney, her mother and next friend, appeal the judgments entered upon jury verdicts on their claims against defendant, Travis B. Phillips, for the wrongful death of their father, Allen Foster, Jr. (decedent). We affirm.

Defendant negligently caused an automobile accident resulting in the decedent's death. Defendant was intoxicated at the time of the accident.

Plaintiffs sued defendant for economic and noneconomic damages resulting from the wrongful death. Before trial, defendant admitted that his "negligence and negligence per se was the sole and proximate cause of the automobile accident." The case therefore proceeded to a jury trial to determine the amount of damages owed to plaintiffs.

The jury awarded the son $24,581 in economic damages and $11,166 for noneconomic damages. It awarded the daughter $17,505 in economic damages, but nothing for noneconomic damages.

Plaintiffs filed a motion for post-trial relief, which included an argument that the verdicts for noneconomic damages were inadequate. The trial court denied the motion, and this appeal followed.

### I.

■ Plaintiffs first contend that the trial court erred when it refused to allow them to introduce evidence of defendant's excessive blood alcohol level. We find no reversible error.

Before trial, defendant filed a motion in limine seeking to exclude evidence pertaining to the circumstances surrounding the automobile accident, including defendant's blood alcohol content. The trial court entered an order "partially granting" the motion. It ruled that any reference to defendant's blood alcohol content on the day of the accident or to toxicology expert opinions was prohibited.

Section 13–21–203(1), C.R.S.1999, describes the damages that a jury may award in a wrongful death action:

[T]he jury may give such damages as they may deem fair and just, with reference to the necessary injury resulting from such death, including damages for noneconomic loss or injury as defined in section 13–21–102.5 and subject to the limitations of this section and including within noneconomic loss or injury damages for grief, loss of companionship, pain and suffering, and emotional stress, to the surviving parties who may be entitled to sue; and also having regard to the mitigating or aggravating circumstances attending any such wrongful act, neglect, or default....

Until the statute was amended in 1989, damages recoverable for wrongful death were limited to the pecuniary loss suffered as a result of the death. *Moffatt v. Tenney*, 17 Colo. 189, 30 P. 348 (1892). The effect of the 1989 amendment was to permit additional recovery for noneconomic damages. *See* Colo. Sess. Laws 1989, ch. 130, § 13–21–203 at 752.

■ Initially, we reject plaintiffs' argument that the statute permits the jury to consider the aggravating circumstances surrounding defendant's "act" or "neglect." The supreme court in *Moffatt v. Tenney, supra,* 17 Colo. at 198, 30 P. at 351 rejected the same contention:

Since mitigating circumstances relating to the act itself do not justify an assessment of damages less than compensatory, it is not reasonable to suppose that the aggravating circumstances contemplated by the statute are such as would justify an assessment of damages more than compensatory.... [W]e are constrained to hold that the words 'mitigating or aggravating circumstances attending such wrongful act' ... contemplate circumstances not relating to the wrongful act itself, but such as affect the actual damages suffered by the surviving party entitled to sue, either by way of diminishing or enhancing the same.

*See also Mangus v. Miller*, 35 Colo.App. 335, 535 P.2d 219 (1975).

Contrary to plaintiffs' argument, the amendment to the statute in 1989 does not require a different interpretation. Noneconomic damages are still compensatory damages. As we read *Moffatt*, evidence of aggravating factors attendant to a defendant's wrongful conduct remains inadmissible, if not relevant to prove actual compensatory damages.

This does not necessarily mean that evidence of wrongful conduct must always be excluded under the present version of § 13–21–203(1). We may assume, without deciding, that in an appropriate case a survivor may now be entitled to present evidence showing that grief and emotional distress were aggravated by knowledge that a loved one was killed by a drunk driver. Neverthe-

less, plaintiffs at no time made any offer of proof, and nothing in the record indicates, that defendant's intoxication had sufficient meaning to the children, who were very young when their father died, to have in fact aggravated their grief and emotional stress.

Furthermore, contrary to plaintiffs' assertion, the trial court's order did not forbid plaintiffs' limited use of the evidence to show that the children suffered aggravated grief and emotional stress by knowledge that defendant had been intoxicated. The order only excluded evidence "regarding the blood alcohol content of the defendant ... and toxicology expert opinions." Plaintiffs do not suggest that such technical evidence would have had any meaning to either child, and plaintiffs made no attempt during trial to introduce evidence for the more limited purpose of showing that noneconomic damages were aggravated because defendant was intoxicated.

In sum, the court's order did not prohibit plaintiffs from presenting evidence for the limited purpose of showing that noneconomic damages were aggravated as a result of the knowledge of either child that defendant was intoxicated; plaintiffs have not directed us to any portion of the record indicating any attempt to introduce evidence for such a limited purpose; and nothing in the record before us indicates that either child in fact suffered increased grief and emotional stress because defendant was intoxicated.

For the first time in oral argument, plaintiffs' counsel argued that a separate order entered earlier by the trial court effectively prohibited any reference to defendant's intoxication, even for the limited purpose of showing aggravation of noneconomic damages. In that order, the trial court denied plaintiffs' motion to supplement the trial management order. Plaintiffs rely on the court's conclusion that "[a]s damages under § 13–21–202 are compensatory only, aggravating circumstances are not relevant."

However, the court's earlier ruling was in response to plaintiff's sole argument that the present version of § 13–21–203(1) now permitted the jury to consider all aggravating circumstances surrounding the defendant's wrongful conduct. As already discussed, the court properly rejected such a claim.

Plaintiffs' argument that evidence of defendant's intoxication should at least be admitted for the limited purpose of showing aggravation of plaintiffs' noneconomic damages was made only once, in a single sentence. It was in plaintiffs' response to defendant's first motion in limine. As noted, the trial court granted that motion in limine only to the extent of expressly prohibiting technical evidence concerning the level of defendant's blood alcohol level.

The court's orders were each in response to specific motions and arguments. Any confusion as to their combined effect resulted, not from the orders themselves, but from the timing and manner in which plaintiffs raised the argument for limited use of the evidence, as well as from plaintiffs' failure to seek clarification of any confusion.

In the circumstances presented here, we find no reversible error by the trial court and no basis for reversing the judgments entered on the jury's verdicts.

## II.

■ Plaintiffs next contend that the trial court erred when it refused to instruct the jury on negligence per se. We do not agree.

Plaintiffs tendered a jury instruction that would have informed the jury that defendant had admitted his negligence per se was the sole proximate cause of the decedent's injuries and that "negligence per se" meant defendant had "violated a statute or ordinance, one of the purposes of which was to protect against the type of losses suffered by plaintiffs."

The trial court refused plaintiffs' instruction. However, during the trial, the court read to the jury a stipulation which stated that defendant's "negligence and negligence per se was the sole, proximate cause of the automobile accident...." The court also instructed the jury that "[t]he defendant admits that his negligence was the cause of an automobile accident ... and that the accident was the cause of the death of [decedent]." Finally, the court instructed the jury that, when the attorneys on both sides agree as to

the existence of a fact, or a fact has been admitted, the jury must regard that fact as proved.

■ Negligence per se serves to establish the existence of the defendant's breach of a legally cognizable duty owed to the plaintiff. *Largo Corp. v. Crespin,* 727 P.2d 1098 (Colo. 1986).

Here, both defendant's duty and his breach of that duty were established by admission, and the instructions to the jury concerning that admission adequately explained that defendant was liable as a matter of law for the damages suffered by plaintiffs. Hence, we find no error in the instructions given. *See Martin v. Minnard,* 862 P.2d 1014 (Colo.App.1993)(when the instructions given cover all the points of a case, the refusal to give another instruction on negligence per se, even if it would have correctly stated the law, is not error); *see also Graf v. Tracy,* 194 Colo. 1, 568 P.2d 467 (1977)(because jury found the defendant was negligent, failure to give instruction on *res ipsa loquitur* did not prejudice the plaintiff).

### III.

■ Plaintiffs next assert the trial court erred in refusing to grant their motion for post-trial relief because the jury's awards of noneconomic damages to son and daughter were both insufficient as a matter of law. We are not persuaded.

■ Mere disagreement with the amount of damages awarded is not a sufficient ground to overturn an award of damages which is supported by competent evidence in the record. It is the sole province of the jury to fix fair and just damages. Only upon a showing of arbitrary or capricious jury action, or that the jury was swayed by passion or prejudice, should an appellate court overturn a jury verdict. *Lee's Mobile Wash v. Campbell,* 853 P.2d 1140 (Colo.1993); *see also Martinez v. Shapland,* 833 P.2d 837 (Colo.App.1992)(a jury's verdict will not be set aside on the basis of inadequacy unless, in view of the evidence, it can be said with certainty that the verdict is grossly and manifestly inadequate, or unless the amount of the verdict is so small as to demonstrate that

the jury did not consider all the relevant evidence).

Based on the record before us, we cannot say that the jury's award to the son of $11,166 for noneconomic damages reflects that the jury neglected to consider the evidence or that it acted arbitrarily. From the evidence presented, the jury could have reasonably found that the contact between the decedent and his son had been limited and that, while the son may have been emotionally affected by the death of his father, the impact was neither severe nor protracted. We therefore find no basis for setting it aside.

■ The jury's award to the daughter of zero dollars for noneconomic damages is more troublesome. On the one hand, absent a complete lack of contact, it is difficult to imagine that a child can suffer no grief, loss of companionship, pain and suffering, or emotional stress, with the loss of a parent.

On the other hand, it was undisputed that the daughter was less than four years old at the time of the accident; her contact with the decedent had been even more limited than that of the son; and the decedent had failed to fulfill a promise to the daughter's mother to put aside money for the child's future needs. Further, the only testimony concerning the decedent's relationship with the daughter, as well as the impact of the loss on her, was provided by the mother. Defense counsel engaged in an extensive cross-examination of the mother to impeach that testimony.

In the circumstances presented here, the jury could reasonably have discounted the mother's testimony and found that the child's grief had been minimal. It could further have reasonably determined that, in terms of loss of companionship, the evidence was insufficient to sustain an inference that the decedent would have maintained meaningful contact with the daughter.

In *Lee's Mobile Wash v. Campbell, supra,* the supreme court upheld an award of zero noneconomic damages to a motorist injured in a car accident, even though it was stipulated that the motorist had met the threshold in medical expenses and the jury had found

both causation and injury. The court relied in part on the principle that a reviewing court should reconcile a jury verdict with the evidence if at all possible. It concluded that the jury could reasonably have found that, while the motorist suffered injuries sufficient to have required medical attention, the injuries were "de minimis."

We must therefore uphold the jury's verdict unless we can conclude that the daughter's noneconomic damages were necessarily more than "de minimis." Because we cannot do so in light of the record before us, we find no error in the trial court's denial of plaintiffs' post-trial motion. *See Lee's Mobile Wash v. Campbell, supra; cf. Patison v. Campbell,* 337 S.W.2d 72 (Mo.1960)(upholding award of zero damages in wrongful death action as equivalent to award of nominal damages supported by the evidence); *but cf. Martinez v. Shapland, supra.*

### IV.

■ Plaintiffs' final contention is that the trial court erred when it awarded defendant costs, pursuant to § 13–17–202, C.R.S.1991, without a sufficient basis in fact or law and without any findings of fact. In the circumstances presented here, we disagree.

■ If a party contests the factual basis for an award of costs and timely requests a hearing, the trial court must hold a hearing. *See In re Marriage of Aldrich,* 945 P.2d 1370 (Colo.1997); *Pedlow v. Stamp,* 776 P.2d 382 (Colo.1989). However, a district court is under no obligation to conduct a hearing *sua sponte,* and a party who fails to make a timely request waives the right to a hearing on the factual basis for the award. *See In re Marriage of Aldrich, supra; Schmidt Construction Co. v. Becker–Johnson Corp.,* 817 P.2d 625 (Colo.App.1991).

■ Likewise, the trial court must make sufficient findings so that, when considered together with the record, this court can determine the basis for an award of costs. *Van Steenhouse v. Jacor Broadcasting of Colorado, Inc.,* 935 P.2d 49 (Colo.App.1996); *rev'd on other grounds,* 958 P.2d 464 (1998). However, while it is the better practice to make express findings, they may be implicit

in a court's ruling. *See In re Life Insurance Trust Agreement of Seeman,* 841 P.2d 403 (Colo.App.1992). When the ruling, in the context of the record, is sufficient to determine its basis, and the record is sufficient to support the award, a failure to make express findings does not require reversal. *See City & County of Denver v. Ameritrust Co. National Association,* 832 P.2d 1054 (Colo.App. 1992); *In re Marriage of Bernardoni,* 731 P.2d 146 (Colo.App.1986).

Here, a review of the record indicates that the court was provided detailed motions and supporting documentation regarding costs. Plaintiffs did not request a hearing to challenge defendant's factual assertions or to present additional evidence.

Implicit in the trial court's order is the determination that *all* costs submitted by defendant were necessary and reasonable. Thus, we are not presented with any unexplained reduction in any cost. In these circumstances, and in light of the detailed nature of the submissions tendered to the court, as well as plaintiffs' failure to request a hearing, we find no reversible error in the court's award of costs.

We recognize that defendant's settlement offers, which provided the basis for the award of costs under § 13–17–202, were made at different times to the two plaintiffs. As a result, some costs could be awarded against one plaintiff but not the other. Despite that, the trial court allocated the costs equally between plaintiffs. However, because this specific issue has not been raised on appeal, we do not address it.

■ We reject plaintiffs' separate complaint that the award of expert witness fees was unfair because the witness, an accident reconstruction expert, testified in defendant's criminal trial, but not the civil trial. While the witness did not testify in the civil trial, the court was authorized in awarding fees to consider the time spent in preparing for the civil trial, together with expenses for travel, food, and lodging. *See American Water Development, Inc. v. City of Alamosa,* 874 P.2d 352 (Colo.1994); *see also Cherry Creek School District # 5 v. Voelker,* 859 P.2d 805 (Colo.1993).

Furthermore, in addition to not requesting a hearing, plaintiffs presented no evidence to the trial court indicating that the expert's time was related solely to the criminal case. On appeal, plaintiffs have directed us to no authority supporting the proposition that, when services performed by an expert are beneficial to related criminal and civil cases, the court must nevertheless apportion an award of costs for the expert's fees in the civil case. *See* C.A.R. 28: *Mauldin v. Lowery*, 127 Colo. 234, 255 P.2d 976 (1953); *In re Marriage of Miller*, 888 P.2d 317 (Colo.App. 1994), *rev'd on other grounds* 915 P.2d 1314 (Colo.1996)(appellate court will not consider legal proposition that is presented without supporting argument or authority).

We therefore find no reversible error in the trial court's award of costs.

Judgments affirmed.

Judge KAPELKE concurs.

Judge RULAND concurs in part and dissents in part.

Judge RULAND concurring in part and dissenting in part.

I concur with Parts I, II and III of the majority opinion. I disagree with the conclusion reached in Part IV, and thus, I respectfully dissent.

As noted by the majority, in *Van Steenhouse v. Jacor Broadcasting of Colorado, Inc.*, 935 P.2d 49 (Colo.App.1996), a division of this court held that for the trial court's cost award to be reviewed on appeal, the court must adopt sufficient findings to disclose the basis for its decision. Indeed, while space was specifically provided in the order for those findings in this case, none were made. And, contrary to the majority's conclusion, I am unable to determine from the record before us the basis for the trial court's award of costs.

The initial bill of costs filed by defendant reflected that offers of settlement were made on February 20, 1996, to plaintiff Marqueece Foster and on June 6, 1996, to plaintiff Lexus Foster. Because the jury verdicts entered were less than these offers, defendant requested an award of costs in the amount of approximately $13,200.

Plaintiffs filed a nine-page response challenging essentially each of the costs requested. For example, with reference to an accident reconstruction expert, the response pointed out that he had been retained and testified in a criminal case involving this incident and that costs should not be awarded on that basis. In a reply, defendant claimed that the expert was retained for both cases and that fees claimed for work done after the offers of settlement were rejected. However, neither the billing statements from the expert nor the response of defendant were verified. *See* C.R.C.P. 121 § 1–15(2).

The first difficulty I have with the award is that the issues in the criminal case (vehicular homicide) were significantly different than those involved in this case (negligence and negligence *per se* ). Specifically, in the criminal case it was necessary for the prosecution only to establish that defendant was driving the vehicle prior to the fatal collision while intoxicated. *See People v. Garner*, 781 P.2d 87 (Colo.1989). Here, some fault for the collision had to be attributed to defendant to establish liability. Hence, one necessarily assumes that the focus of any investigation in each case would be different.

Nevertheless, there is nothing in this record to explain how the expert's work was related to this case. While he was listed as an expert, contrary to the allegations in the defendant's trial court submission, I do not find any copy of his report in the record specifying what he actually did. Further, entries on his invoices are generic and without specific reference to his professional activity other than in the most general terms.

Next, notwithstanding defendant's claim that the fees requested were incurred after the offer of settlement was made, as noted, one of the offers was not made until June 6, 1996. However, the invoices from the expert reflect that approximately $9,800 of the services were billed on dates prior to this offer and only $1,205 were for services incurred after that date. Yet, for reasons I am unable to ascertain, the award of costs was allocated equally between the two plaintiffs.

Finally, as noted, defendant stipulated in this case prior to trial that he was guilty of negligence and negligence *per se.* In contrast, the expert prepared for and actually testified in the criminal case. Nevertheless, $6,200 of the total fees incurred were charged for the civil case and a significantly lesser amount was charged to the criminal case. Again, I cannot determine the reasons therefor from this record.

Other examples of the problems posed by the lack of findings appear from the defendant's submissions. However, to discuss those issues would unduly lengthen this dissent.

I note only that while, as the majority correctly points out, no hearing was requested by plaintiffs on defendant's bill of costs, it is undisputed that defendant had the burden to establish those costs. The purpose of the court's findings is to advise this court why defendant did or did not satisfy that burden.

Because I am unable to understand that determination here, I would reverse the award of costs and remand the case to the trial court for entry of findings on the contested issues.