25CA0498 Marriage of Rich 01-29-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0498
City and County of Denver District Court No. 23DR30642
Honorable Adam J. Espinosa, Judge

In re the Marriage of

Glen Michael Rich,

Appellee,

and

Katherine Mary Kappas,

Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Johnson and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 29, 2026

Harrington Brewster Mahoney Smits, P.C., Joshua C. Sauer, Denver, Colorado, for Appellee

Suazo Law LLC, Ian Z. Shea, Littleton, Colorado, for Appellant

¶ 1    Katherine Mary Kappas (wife) appeals those portions of the permanent orders concerning the marital property division and maintenance on the dissolution of her marriage to Glen Michael Rich (husband).  We affirm.

## I.    Background

¶ 2    In 2024, the district court entered permanent orders dissolving the parties' marriage of approximately ten years.  The court divided the marital estate, which was valued at approximately $5.6 million, roughly equally.  Wife was allocated approximately $2 million in cash proceeds from the sale of the marital home, plus bank, retirement, and investment accounts valued at over $700,000.  Husband was allocated approximately $160,000 in marital debt, plus the parties' second home in Florida, which had $300,000 in equity.  In addition, the court allocated husband the entirety of the marital value of his ownership interests in his businesses, Key Lime Air and CBG LLC (CBG), totaling $2,592,000.

¶ 3    The district court awarded wife $8,500 per month in maintenance for four years and eleven months.

1

## II.    Marital Property Division

¶ 4    Wife contends that the district court erred when valuing husband's business interests and otherwise made insufficient findings in support of its division of the marital estate.  We disagree.

### A.    Valuation of Husband's Business Interests

#### 1.    Standard of Review and Applicable Law

¶ 5    The court has latitude to equitably divide the marital estate based on the facts and circumstances of the case, and we will not disturb its decision absent a showing that the court abused its discretion.  *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28.  "A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law."  *In re Marriage of Fabos*, 2022 COA 66, ¶ 16.

¶ 6    When dividing marital property, the court determines the property's approximate current value.  *In re Marriage of Wright*, 2020 COA 11, ¶ 4.  In doing so, the court may select the valuation of one party over that of the other party or make its own valuation, and its decision will be affirmed if the value is reasonable in light of the evidence as a whole.  *Medeiros*, ¶ 41; *In re Marriage of Krejci*,

2013 COA 6, ¶ 23 (recognizing that a valuation will be upheld "unless clearly erroneous").

## 2.    Additional Background

¶ 7    Husband came into the marriage with a twenty-four percent interest in Key Lime Air, a small cargo and passenger airline, and a thirty percent interest in CBG, which was formed solely to purchase and lease aircraft to Key Lime Air.  As of the permanent orders, husband's interest in Key Lime Air had increased to 33.33%, and his interest in CBG remained unchanged.

¶ 8    The parties retained a joint expert to value husband's business interests as of the date of the marriage and the date of the decree, with any increase in value representing marital property to be divided by the district court.  *See* § 14-10-113(4), C.R.S. 2025 (defining the increase in value of an asset acquired prior to the marriage as marital property).  The joint expert valued husband's business interests as of the date of the marriage and December 31, 2023, and presented two different valuation methods for the court's consideration.

¶ 9    On an investment value basis, the joint expert opined that the value of husband's interests in Key Lime Air and CBG had

increased during the marriage by $1,477,000 and $2,589,000, respectively. Alternatively, after applying discounts of fifteen and twenty-five percent for lack of control and marketability, the joint expert opined that the value of husband's interests in Key Lime Air and CBG had increased by only $941,000 and $1,651,000 on a fair market value basis.

¶ 10    Wife presented a rebuttal expert who opined that the joint expert had failed to account for airlines typically selling at a multiple of their net asset value. Wife's expert adjusted the joint expert's figures and concluded that the marital values of Key Lime Air and CBG were $2,370,987 and $4,921,688, respectively.

¶ 11    In the permanent orders, the district court found the testimony of the joint expert to be "more helpful, more accurate, and more credible." The court found the joint expert's use of discounts for lack of control and lack of marketability based on husband's minority interest in the businesses to be "compelling and convincing." Conversely, the court was skeptical of the rebuttal expert's adjustments because the market value of invested capital multiplier that he used was based on data from the sale of large, national airlines.

### 3.     Date of Valuation

¶ 12     Wife first argues that the district court erred by relying on the joint expert's valuation, which was valid as of December 31, 2023, as opposed to the date of the October 4, 2024, permanent orders hearing.  Accordingly, wife asserts that the court ignored increases in the assets of both businesses during 2024.  We perceive no error.

¶ 13     Under section 14-10-113(5), marital "property shall be valued as of the date of the decree or as of the date of the hearing on disposition of property if such hearing precedes the date of the decree."  However, when valuing marital assets, it is the parties' duty to present the court with the requisite data to allow it to make a sufficient valuation, and any failure by the parties in this regard does not provide them with grounds for review.  *Krejci*, ¶ 23; *cf. In re Marriage of Zappanti*, 80 P.3d 889, 892 (Colo. App. 2003) ("[A] party who fails to present sufficient evidence at trial should not be allowed on appeal to challenge the inadequacy of the evidence.").

¶ 14     At the permanent orders hearing, the joint expert acknowledged that she had seen the businesses' financial statements for the first half of 2024.  However, she opined that no revisions to the December 2023 values were necessary because the

mid-year statements had not been reviewed by the companies' accountants or been adjusted for items like depreciation. And while she conceded that CBG had recently acquired additional airplanes, she confirmed that the airplanes had been entirely financed.

¶ 15 The rebuttal expert criticized the joint expert's December 2023 value as "stale." However, the rebuttal expert had also valued the businesses as of December 2023, although he offered to "recalculate [the] results," using the 2024 figures "if requested to do so." The rebuttal expert testified that the new airplanes would have increased the present value of CBG by millions of dollars, although he did not provide a clear dollar figure.

¶ 16 The district court agreed with the joint expert and did not find the 2023 values to be "stale," reasoning that the 2024 fiscal year "ha[d] not concluded."

¶ 17 Under these circumstances, we cannot say that the district court erred. The only definitive values that the court received were as of December 2023, and neither expert used the 2024 figures in valuing the businesses. Accordingly, the failure by both parties to introduce a more recent valuation does not provide grounds for reversal. *See Krejci*, ¶ 23; *Zappanti*, 80 P.3d at 892.

¶ 18    Wife suggests that court should have nonetheless relied on the rebuttal expert's report, which indicated that, based on the June 2024 financial statements, the shareholders' equity in CBG, "without adjustments," had increased by $3,300,000. But the district court was free to credit the joint expert's testimony that it was not appropriate to rely on such unadjusted mid-year information, which even the rebuttal expert had not used in his calculations. *See In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003) ("[C]redibility determinations and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the trial court."); *In re Marriage of Farr*, 228 P.3d 267, 270 (Colo. App. 2010) (the district court's resolution of conflicting evidence is binding on review).

¶ 19    Lastly, we disagree with wife's suggestion that the district court was otherwise obligated to make its own valuation adjustments based on the mid-year financial statements. *See In re Marriage of Eisenhuth*, 976 P.2d 896, 901 (Colo. App. 1999) (recognizing that while the district court is required to consider the evidence presented to it, it does not act as a surrogate attorney).

### 4.    Application of Discounts

¶ 20    Wife next argues that the district court erred when determining the marital value of the businesses because it erroneously applied marketability and lack of control discounts. But, given the substantial discretion afforded to the district court when valuing marital assets, we are not persuaded.

¶ 21    In *In re Marriage of Thornhill*, 232 P.3d 782, 787 (Colo. 2010), the Colorado Supreme Court refused to impose per se legal tests governing the valuation of marital property because district courts are vested with significant discretion to divide marital estates equitably.  Specifically, *Thornhill* declined to adopt a blanket rule prohibiting marketability discounts when valuing an ownership interest in a closely held corporation.  *Id.* at 785.  Even though the court had previously prohibited marketability discounts in the context of a corporation buying out a dissenting minority shareholder, *see Pueblo Bancorporation v. Lindoe, Inc.*, 63 P.3d 353 (Colo. 2003), *Thornhill* refused to extend that prohibition to dissolution of marriage proceedings.  *Thornhill*, 232 P.3d at 785.

¶ 22    The *Thornhill* court reasoned that section 14-10-113 did not specifically require marital assets to be valued using any particular

method and that said section instead gave district courts "broad discretion to divide marital property as they 'deem[] just' after 'considering all relevant factors.'" *Id.* at 786 (quoting § 14-10-113(1)). Accordingly, *Thornhill* left the application of a marketability discount to the district court's discretion because "the language of the marriage dissolution statute suggests that a case-by-case approach is most appropriate." *Id.* at 787.

¶ 23 Here, while the joint expert valued the businesses both with and without discounts for lack of control and marketability, the district court found the use of discounts to be "compelling and convincing" based on the joint expert's report. In turn, that report explained that a lack of control discount accounted for the fact that husband, as a minority shareholder in both businesses, could not unilaterally take actions such as appointing management, determining compensation, declaring dividends, and setting business policy. The report likewise explained that a lack of marketability discount accounted for restrictions on an owner's ability to sell their ownership interest.

¶ 24 Wife argues that the district court's valuation was unsupported by the record because the joint expert did not

9

specifically advocate for either a discounted or undiscounted valuation approach. She also asserts that the joint expert's report lacked detail as to the studies that the expert relied on when determining appropriate discounts. But it is well-established that an expert may base their opinion on information that has not been admitted into evidence so long as said information is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." CRE 703; *see KN Energy, Inc. v. Great W. Sugar Co.*, 698 P.2d 769, 785 (Colo. 1985).

¶ 25    And here, because the district court was specifically persuaded by the joint expert's explanation of the discounts, we are satisfied that the court appropriately weighed both valuation options and acted within its substantial discretion when deciding to apply the discounts. *See Thornhill*, 232 P.3d at 786; *Medeiros*, ¶ 41; *Krejci*, ¶ 23. While wife cites the rebuttal expert's testimony that the discounts were inappropriate, the district court was free to weigh such testimony as it saw fit. *See Lewis*, 66 P.3d at 207; *see also In re Marriage of Bookout*, 833 P.2d 800, 804 (Colo. App. 1991) ("The weight to be accorded to the valuation techniques of an expert is for the [district] court's determination . . . .").

¶ 26 We are also unpersuaded that the district court erred by applying a marketability discount to husband's interest in CBG, which had a pre-discounted value that was almost entirely based on the appraised value of the company's airplanes. Relying on foreign authority limiting the application of marketability discounts, wife argues that it is improper to apply such discounts to tangible assets like airplanes. But we decline wife's invitation to impose such a prohibition here because *Thornhill*, 232 P.3d at 787, affords district courts substantial discretion to value assets on a case-by-case basis. And because we have already concluded that the application of a marketability discount was supported by the record in the form of the joint expert's report, we otherwise perceive no abuse of the court's substantial discretion.

¶ 27 For similar reasons, we are not persuaded by wife's assertion, again based on foreign authority, that the district court could not apply a marketability discount when there was no indication that husband was contemplating selling his business interests. Indeed, in *Thornhill, id.* at 786, the supreme court cited with approval *Fausch v. Fausch*, 697 N.W.2d 748, 752–53 (S.D. 2005), which held that "[w]hether or not it is fair or appropriate to apply a discount in

11

a divorce case where no immediate sale is contemplated is for the trial court to determine based upon the evidence of the case."

### 5. Business Intangibles

¶ 28    We lastly consider and reject wife's contention that the district court abused its discretion by failing to consider an increase in value of the intangible assets of Key Lime Air, such as the airline's Federal Aviation Administration certifications.

¶ 29    The joint expert testified that she had considered approximately $700,000 worth of intangible assets that were listed as assets of Key Lime Air by the company's independent accountants and had relied on the book values as listed by the accountants when determining that the intangible assets had not changed in value.  Conversely, the rebuttal expert opined that the intangible assets had increased in value as reflected by the market value of invested capital multiplier that he applied to the assets of Key Lime Air and CBG when reaching his opinion of value.

¶ 30    But the district court found credible the joint expert's testimony that the value of the intangible assets had not changed during the marriage and was skeptical of the multiplier used by the

12

rebuttal expert because it was based on sales of airlines that were substantially larger than Key Lime Air.

¶ 31 Therefore, we again decline to second-guess the district court's credibility findings or otherwise reweigh the evidence to set aside the court's findings when, as here, the record supports them. *See Bookout*, 833 P.2d at 804; *see also People in Interest of A.J.L.*, 243 P.3d 244, 249-56 (Colo. 2010) (reversing when appellate court "improperly substituted its judgment for that of the trial court regarding the credibility of witnesses and the weight, sufficiency, and probative value of the evidence").

## B. General Sufficiency of Findings in Support of Marital Property Division

¶ 32 We next reject wife's assertion that the district court made inadequate findings explaining how it arrived at the marital property division.

¶ 33 While section 14-10-113(1) requires the court to consider certain factors when dividing the marital property, such as the contributions of each spouse, the value of the parties' separate property, and the spouses' respective economic circumstances, weighing the factors is within the district court's discretion, and the

13

court need not make specific findings on each factor. *In re Marriage of Powell*, 220 P.3d 952, 959 (Colo. App. 2009); *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9 (recognizing that the court must make findings of fact and conclusions of law sufficiently explicit to give an appellate court a clear understanding of the basis of its order).

¶ 34 Here, although the district court did not engage in a detailed discussion of each statutory factor, we are satisfied that it considered the pertinent factors when dividing the marital estate. *See Powell*, 220 P.3d at 959. For instance, at other points in the permanent orders, the court found that both parties had contributed to the marriage, with wife supporting husband's businesses and contributing to the parties' household. *See* § 14-10-113(1)(a). The court also engaged in a detailed discussion of the parties' respective economic circumstances, including each party's present earning capacity. *See* § 14-10-113(1)(c).

¶ 35 While wife argues that the district court failed to consider her deteriorating health when dividing the marital estate, the district court did "not find her credible that she is unable to work due to her medical conditions, medications, or age," and, therefore, it is apparent to us to the court did not find her health to be a relevant

economic circumstance when dividing the marital estate. *See Foster v. Phillips*, 6 P.3d 791, 796 (Colo. App. 1999) (findings may be implicit in a court's ruling when the ruling, in the context of the record, is sufficient to determine its basis). Lastly, we decline to consider wife's assertion, made for the first time in her reply brief, that the court mischaracterized her partial, pre-decree use of the proceeds from the marital home when allocating the marital property. *See In re Marriage of Herold*, 2021 COA 16, ¶ 14 (issues raised for the first time in reply brief will not be addressed).

### III. Maintenance

¶ 36 Wife next asserts that the district court committed multiple errors when awarding her $8,500 per month in maintenance. We are not persuaded.

### A. Standards of Review and Applicable Law

¶ 37 The district court has broad discretion in deciding the amount and duration of a maintenance award, and, absent an abuse of that discretion, its decision will not be reversed. *See* § 14-10-114(2), (3)(e), C.R.S. 2025; *In re Marriage of Vittetoe*, 2016 COA 71, ¶ 14.

¶ 38 Under section 14-10-114(3), the district court must follow a specific process when considering a maintenance request. *In re*

*Marriage of Stradtmann*, 2021 COA 145, ¶ 28. "[T]he court must first make written or oral findings on each party's gross income, the marital property apportioned to each party, each party's financial resources, the reasonable financial need as established during the marriage, and the taxability of the maintenance awarded." *Herold*, ¶ 25; *see also* § 14-10-114(3)(a)(I).

¶ 39    Next, the court must determine the amount and term of maintenance, if any, that is equitable after considering the statutory advisory guidelines and a list of non-exclusive statutory factors. § 14-10-114(3)(a)(II)(A), (3)(a)(II)(B), (3)(b), (3)(c); *Wright*, ¶ 15. But when, as here, the parties' combined annual adjusted gross income exceeds $240,000, the advisory guideline amount for maintenance under section 14-10-114(3)(b)(I) does not apply. *See* § 14-10-114(3.5). Instead, the court must determine maintenance based on the statutory factors in section 14-10-114(3)(c). *See* § 14-10-114(3.5). Then, only if the party seeking maintenance lacks sufficient property, including marital property apportioned to them, to provide for their reasonable needs and is unable to support themself through appropriate employment, may the court award maintenance. § 14-10-114(3)(a)(II)(C), (3)(d).

## B.	The Parties' Respective Incomes

¶ 40	We first consider and reject wife's contention that the district court erred when determining the parties' respective incomes.

¶ 41	As to wife, the district court found that she was not presently working and imputed to her an income of $3,048 per month, which represented a full-time income at Denver's minimum wage of $18.29 per hour.  While wife argues that the district court erred because certain health conditions prevented her from working and because she had not historically earned such a wage, we perceive no error.

¶ 42	If a party is voluntarily unemployed or underemployed, maintenance is based on a determination of that party's potential income.  § 14-10-114(8)(c)(IV).  Potential income is the amount a party could earn from a full-time job commensurate with the party's demonstrated earning ability, *In re Marriage of Tooker*, 2019 COA 83, ¶ 26, although potential income shall not be determined for a physically or mentally incapacitated party, § 14-10-114(8)(c)(IV).

¶ 43	Here, the district court considered wife's past work history, including her work as a pilot, real estate agent, and director of apparel at Key Lime Air.  And although the court found that wife

was "suffering from certain medical conditions," it did "not find her credible that she [was] unable to work due to her medical conditions, medications, or age."

¶ 44    While wife cites her lengthy testimony concerning her medical conditions that prevent her from working, we decline to second-guess the court's credibility determinations or otherwise reweigh the evidence in her favor.  *See A.J.L.*, 243 P.3d at 249-56; *In re Marriage of Amich*, 192 P.3d 422, 424 (Colo. App. 2007) ("The [district] court can believe all, part, or none of a witness's testimony, even if uncontroverted, and its resolution of conflicting evidence is binding on review.").  And we otherwise reject wife's argument that the level of income imputed by the district court was inconsistent with her demonstrated earning ability given that the court found that she could work full time and based her income on the present minimum wage in the court's jurisdiction.

¶ 45    As to husband, the district court found that his income was $35,069 per month, based on his paystubs and 2023 W-2.  Wife asserts that the court erred because it declined to use husband's 2023 K-1s for Key Lime Air and CBG, which reflected approximately an additional $1.3 million in income.  The court cited husband's

testimony that he did not take home any of the income reflected on the K-1s since the monies corresponded to a one-time insurance payout for an airplane that had been totaled in an accident.

¶ 46 We agree with wife that the district court would have erred if it had excluded husband's K-1 income solely because he did not take any distributions. Husband is the vice president of Key Lime Air, and section 14-10-114(8)(c)(I)(W) limits a party's gross income from a limited liability company or closely held corporation to "actual cash distributions received" only if that party "is a passive investor, has a minority interest in the company, and does not have any managerial duties or input."

¶ 47 However, because the district court also found, with record support in the form of husband's testimony, that the income on the K-1s corresponded to a one-time insurance settlement for a destroyed plane, we disagree that the district court erred by excluding it. As explained by another division of this court in *In re Marriage of Laughlin*, 932 P.2d 858, 861 (Colo. App. 1997), settlement proceeds are generally not considered income to the extent that the payments represent the return of lost principal to the claimant. And here, we view the insurance proceeds as akin to

19

such a return of lost principal given husband's testimony that the payout was for the "total loss" of an airplane that was struck by ground equipment. *Cf.* § 14-10-114(8)(c)(I)(T) (including funds payable from casualty insurance as gross income only "to the extent that such insurance replaces wages or provides income in lieu of wages").

### C. Wife's Reasonable Financial Needs

¶ 48 Wife also contends that the district court abused its discretion by failing to sufficiently consider and meet her reasonable financial needs when awarding maintenance. *See* § 14-10-114(3)(a)(I)(D).

¶ 49 While the district court observed that the parties lived a "high lifestyle" during the marriage, it found wife's reasonable financial needs to be much less than the $44,000 per month listed on her sworn financial statement. Despite the parties' high standard of living, the court found many of wife's claimed expenses to be "exorbitant," with "[e]xamples . . . includ[ing] . . . the [second] home that is being allocated to [husband], $7,000 in monthly travel expenses, monthly pet care of $1,240, and $1,500 in monthly sporting event costs." The court also found that husband had been allocated much of the debt listed by wife and accordingly concluded

20

that her "reasonable monthly financial need is closer to $16,000.00 per month."

¶ 50    We perceive no error.  The district court acted within its discretion as fact finder when it discounted wife's claimed $44,000 in monthly expenses as excessive, and we will not disturb that credibility determination.  *See A.J.L.*, 243 P.3d at 249-56.  Moreover, while wife objects that the court did not explain, dollar for dollar, how it calculated her $16,000 per month in reasonable needs, there is no requirement in the statute that the court account for each dollar of such need, only that it make findings regarding reasonable financial need.  § 14-10-114(3)(a)(I)(D).  And because the court identified examples of the expenses that it found to be excessive or otherwise inapplicable, we can adequately discern from its findings how it found wife's claimed needs to be grossly overstated.  *See Gibbs*, ¶ 9; *In re Marriage of Garst*, 955 P.2d 1056, 1058 (Colo. App. 1998) ("Factual findings are sufficient if they identify the evidence which the fact finder deemed persuasive and determinative of the issues raised.").

¶ 51    Wife also argues that even if her reasonable need was $16,000 per month, the $8,500 monthly maintenance award, plus her

$3,048 per month in imputed income, was insufficient to meet that need. But when considering wife's financial resources, the district court also found that she could earn substantial interest on the approximately $2.8 million in assets that she was receiving in the marital property division, which primarily consisted of cash and other investable assets. *See* §§ 14-10-114(3)(a)(I)(C) and 14-10-114(3)(c)(I) (directing the court to consider "actual or potential income from separate or marital property"). The court credited husband's testimony concerning the interest income that wife could earn on her share of the property division and cited an exhibit prepared by husband demonstrating the monthly interest that wife could earn at various interest rates.

¶ 52    Wife claims that the district court failed to make specific findings as to what amount of her assets could generate interest and what her investment return would be. But we are satisfied that the maintenance award reflects the court's implicit determination that wife's reasonable needs could be met with the combined total of the maintenance awarded, her imputed income, and the interest earned on the significant assets allocated to her in the property division. *See Foster*, 6 P.3d at 796; *cf. In re Marriage of Page*, 70

P.3d 579, 581, 584 (Colo. App. 2003) (applying a previous version of the statute and upholding a maintenance award that was supported by the evidence "based upon the totality of the circumstances"). Moreover, because the district court specifically stated that it was considering wife's ability to earn "monthly interest" on the substantial liquid assets awarded to her, we disagree with her that the court somehow improperly considered unrealized capital gains in its determination.

¶ 53　　Lastly, we reject wife's contention that the maintenance award was inequitable because it left husband with significant disposable income above and beyond his $14,000 per month in reasonable needs. The purpose of the maintenance award is to help meet the reasonable needs of the payee spouse as opposed to "ensur[ing] that the spouses have an equal lifestyle forever." *In re Marriage of Antuna*, 8 P.3d 589, 595 (Colo. App. 2000).

## IV.　Appellate Attorney Fees

¶ 54　　Husband requests an award of his appellate attorney fees. We deny his request because he has failed to state a legal and factual basis in support of his request. *See* C.A.R. 39.1.

## V.    Disposition

¶ 55    The judgment is affirmed.

JUDGE JOHNSON and JUDGE GOMEZ concur.